IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PATRICK O. HAMPTON,

    Plaintiff,

v.                                                        CASE NO. 1:10-cv-215-MP-GRJ

P. BUHLER, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the Motion To Dismiss filed by Defendants P. Buhler and Lubin[1] based upon Plaintiff's failure to exhaust his administrative remedies. (Doc. 13.) Plaintiff has filed a response to the motion. (Doc. 16.) For the following reasons, it is **RECOMMENDED** that the motion to dismiss be **GRANTED**.

### I. Background

Plaintiff is a prisoner in the custody of the Florida Department of Corrections ("FDOC"). According to the factual allegations in the Complaint, Plaintiff was working in a ditch on a construction site at Mayo Correctional Institution ("Mayo CI") in Mayo, Florida on December 9, 2009 when the ditch collapsed. (Doc. 1.) The dirt in the ditch had been restrained only by two pieces of thin plywood at the time it collapsed on Plaintiff. Plaintiff was covered in dirt up to his chest and was pinned against the ditch's

---

[1] Defendants Meyer and Given have not yet been served because they no longer work for the Florida Department of Corrections. (Doc. 10.) Because the Court is recommending dismissal of this suit based upon Plaintiff's failure to exhaust his administrative remedies, further efforts to serve process upon Defendants Givens or Meyer are unnecessary.

wall with his body at an angle and 1800-2000 pounds of dirt pressing against him.  This incident resulted in numbness and pain in Plaintiff's left knee, leg and toes and his right foot.  The next morning Plaintiff visited medical and was scheduled for X-rays by Defendant P. Buhler, a Registered Nurse at Mayo CI.  Plaintiff states he was examined by a X-ray technician that same day, but was not informed as to the results of the X-rays and instead he was given crutches to use for a period of 14 days.  No follow up appointment was scheduled at that time.

Over the course of the next several days, Plaintiff reported to medical again several times, each time reporting he was suffering severe pain in his back.  He received little or no medical treatment in response to these complaints and even his efforts to enlist the correctional officer in charge of construction projects to assist him in getting medical treatment failed.  Plaintiff was forced to turn in his crutches on December 22, 2009 and was finally seen by a doctor on December 31, 2009.  Three weeks later, he was examined by a specialist in an undetermined specialty and diagnosed with a severe back ailment.  The specialist recommended Plaintiff be further examined by a back specialist.  Plaintiff alleges the Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by exhibiting deliberate indifference to both his serious medical needs as well as to his personal safety.  Plaintiff seeks $20,000 in monetary damages from each Defendant.

## II. The Defendants' Motion to Dismiss and Plaintiff's Response

Defendants Buhler and Lubin filed a motion to dismiss (Doc. 13), seeking dismissal of Plaintiff's Complaint. Defendants Buhler and Lubin argue Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act

(PLRA), 42, U.S.C. § 1997e(a) and therefore because Plaintiff failed to exhaust the Complaint must be dismissed for lack of jurisdiction and for failure to state a claim upon which relief may be granted.[2]

Attached to the motion to dismiss is an affidavit of Rebecca Padgham, who is employed as a Management Analyst I with the FDOC's Bureau of Inmate Grievance Appeals. (Doc. 13 Exh. A.) Ms. Padgham attests that her review of the FDOC's grievance records reflects Plaintiff has filed four grievance appeals, two in 2011 pertaining to property loss, one in May 2010 relating to medical treatment, and one in June 2010 relating to his work assignment. In his response to the Defendants' motion to dismiss, Plaintiff provided little more than a factual description of the incident described in the Complaint. (Doc. 16.) Plaintiff did not address the issue of exhaustion in his response.

### III. Discussion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2-3 (S.D. Ga. 2011)*(*citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005))*.* Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *See Jones v. Bock,* 549 U.S. 199,

---

[2] Defendants Buhler and Lubin also contend the Complaint should be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and because the Defendants are entitled to sovereign immunity under the Eleventh Amendment to the extent Plaintiff intended to sue them in their official capacities. The Court does not need to address either of these grounds, however, because this case is due to be dismissed for Plaintiff's failure to exhaust his administrative remedies.

211 (2002)*.* To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC.  FLA. STAT. ANN. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e.").  Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC.  *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004)(citing FLA. ADMIN. CODE ANN. §§ 33-103.001 to -103.019*).*  Once a prisoner has completed this process, he then has properly exhausted his administrative remedies.  *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and thus is treated like a defense of lack of jurisdiction.  *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008)*.*  Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008)*.*  The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082.  If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed

factual issues related to exhaustion." *Id.*

Defendants Lubin and Buhler contend that Plaintiff did not complete the required administrative remedy process described above.  Plaintiff filed a number of informal grievances related to the events of December 9, 2009, when the ditch collapsed on him. (Doc. 1 Exhs. 1-11.)  However, according to FDOC records Plaintiff only has filed four grievance appeals during his time in FDOC custody. (Doc. 13 Exh. A.)  Two of the grievance appeals were filed in 2011 but neither of them concerned the events Plaintiff describes in his Complaint and instead relate to property loss. (*Id.*)  With respect to the two remaining grievances, one concerned medical treatment and the other concerned a work assignment.  (*Id.*)

Plaintiff filed an informal medical grievance on January 18, 2010 in which he complained about medical co-payments that were taken from his inmate account for some of the visits he made to medical in the wake of the ditch collapse on December 9, 2009.  (Doc. 1 at 16.)  The response to this informal grievance was the refund of the co-pays based upon a correctional officer's verification of Plaintiff's involvement in the ditch collapse. (*Id.*)  Plaintiff filed formal grievance #1001-212-056 on January 28, 2010 to the Warden of Mayo CI. (Doc. 1 at 32-33.[3])  He described his grievance as a medical grievance, described the December 9, 2009 incident when the ditch collapsed on him and then complained he had not received appropriate or timely medical treatment. (*Id.*)  On February 4, 2010, his grievance was denied by the Warden, who noted a negative X-ray of Plaintiff's left knee taken the day after the ditch collapse as well as a future

---

[3] Plaintiff included Exhibit numbers for the attachments to his Complaint, but did not separately number the pages in each Exhibit, so page number references for the Exhibits are to the page of the Complaint on which the applicable Exhibit appears.

doctor's appointment that had been previously scheduled for Plaintiff.  (Doc. 1 at 34.)  Plaintiff filed grievance appeal #10-6-1514 on May 10, 2010 to appeal the denial of this grievance.  (Doc. 13 Exh. A at 2.)  This grievance appeal was returned without action on May 17, 2010 for Plaintiff's failure to provide a copy of the formal grievance to which the appeal related or a valid reason for bypassing the formal grievance level of the administrative process.  (*Id.* at 2.)  Defendants also point out in their motion to dismiss that this grievance appeal also was untimely pursuant to the applicable regulation, which requires a prisoner to appeal the response to a formal grievance within 15 days of the warden's response.  FLA. ADMIN. CODE ANN. § 33-103.011(1)(c)("Grievance Appeals to the Office of the Secretary - Must be received within 15 calendar days from the date of the response to the formal grievance."). Plaintiff filed grievance appeal #10-6-1514 on May 10, 2010, more than three months after the Warden of Mayo CI denied his medical grievance.  This medical grievance was thus untimely and, accordingly, the claims in that grievance were not properly exhausted by Plaintiff.

On April 29, 2010 Plaintiff filed an informal grievance seeing a job change in which he alleged that he still had the injuries from the ditch collapse. (Doc. 1 at 24.)  The response by the FDOC on April 30, 2010 was that medical evaluation had not shown any work restriction and Plaintiff was further advised to discuss his limitations with his supervisor.  (*Id.*)  Plaintiff filed formal grievance #1006-212-024 to the Warden of Mayo CI on June 5, 2010.  (Doc. 1 at 37-46.)  In this grievance, Plaintiff complained he had been placed in an inappropriate job assignment considering the injuries he

suffered when the ditch collapsed on December 9, 2009.[4]  (*Id.*)  This job assignment formal grievance was denied by the Warden of Mayo CI on June 8, 2010 on the grounds Plaintiff was currently assigned to a job in which he could take breaks as often as he liked and because medical had not limited his work in any way.  (*Id.* at 47.)  Plaintiff then timely filed grievance appeal #10-6-19323 on June 18, 2010 to appeal the denial of his job assignment grievance.  (Doc 1 at 48; Doc. 13 Exh. A at 2.)

Plaintiff did not exhaust his remedies with respect to the Eight Amendment claims advanced against the Defendants in his Complaint.  It is evident Plaintiff did not have any problems in understanding the first step of the administrative process set forth by the FDOC, as Plaintiff included copies of a number of informal grievances as attachments to his Complaint.   (Doc. 1 Exhs. 1-11.) Plaintiff also had little difficulty with the second step in the process, as he also included as attachment to the Complaint a number of formal grievances addressed to the Warden of Mayo FCI. (*Id.* Exh. 12.)

The critical problem, however, is that Plaintiff did not properly complete the third step in the administrative process by submitting a timely grievance appeal to the FDOC's Bureau of Inmate Grievance Appeals with respect to any of the Eighth Amendment claims against the Defendants to this lawsuit.  As discussed above, although Plaintiff appealed the denial of one formal grievance related to medical issues, this appeal was untimely and would thus not be administratively exhausted.  The one

---

[4] Although Defendants Buhler and Lubin do not address this in their motion to dismiss, it appears Plaintiff did not file a timely formal grievance after the denial of this informal grievance.  The applicable regulation requires a prisoner to file a formal grievance within 15 days of the official response to the related informal grievance.  FLA. ADMIN. CODE ANN. § 33-103.011(1)(b).  Plaintiff received a response to his informal grievance on April 30, 2010 and did not file his related formal grievance until June 5, 2010, well outside the 15 day period.

grievance related to the incident described in the Complaint that Plaintiff successfully exhausted related to his job assignment and not to the Eighth Amendment claims in the Complaint.  (Doc. 1 at 37-46.)  Accordingly, Plaintiff has failed to properly exhaust the claims alleged in the Complaint.

Accordingly, in accordance with the two-step *Turner* analysis, the Court concludes that Plaintiff has failed to exhaust his administrative remedies with regard to his claims against the Defendants and, therefore, Plaintiff's claims should be **DISMISSED**.

### IV.  Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Motion To Dismiss (Doc. 13) should be **GRANTED** and this case should be **DISMISSED**.

**IN CHAMBERS**  this 7th day of November 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**